# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:                              :
                                    :
ZAMBRANO CORPORATION,               :      **Bankruptcy No. 09-20453-JAD**
                                    :
              Debtor.               :      **Chapter 7**
                                    :
_____     :
                                    :
ROSEMARY C. CRAWFORD,               :
Trustee of the Estate of Zambrano   :      **Adversary No. 09-02045-JAD**
Corporation,                        :
                                    :
              Plaintiff,            :      **Doc. No. 51**
                                    :
       v.                           :
                                    :
EUGENE ZAMBRANO, III,               :
                                    :
              Defendant.            :
_____     :

## <u>MEMORANDUM OPINION</u>

Before the Court is a *Motion to Dismiss Pursuant to Bank.Rule 12(b) and Fed.R.Civ. P. 12(b)(1)* (the "Motion" or the "Motion to Dismiss") filed by Eugene Zambrano, III ("Mr. Zambrano"). By the Motion, Mr. Zambrano seeks to dismiss all counts of the *Complaint of Rosemary C. Crawford, Trustee of the Estate of Zambrano Corporation* (the "*Amended Complaint*"), filed by Rosemary C. Crawford (the "Trustee"), against Mr. Zambrano. For the reasons set forth below, the Motion to Dismiss shall be denied.

00004758.WPD

## I. <u>Standard - Rule 12(b)(6)</u>

Fed. R. Civ. P. 12 is incorporated into the Federal Rules of Bankruptcy Procedure by operation of Fed. R. Bankr. P. 7012.

In <u>Bell Atlantic Co. v. Twombly</u>, 550 U.S. 544 (2007), the United States Supreme Court articulated the appropriate pleading standard in the Rule 12(b)(6) context. <u>Twombly</u> held that for a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Le-Nature's Inc. v. Wachovia Capital Mkts., LLC</u>, Civil Action No. 08-1518, 2009 WL 3571331, at *1 (W.D. Pa. Sept. 16, 2009) (citing <u>Twombly</u>, 550 U.S. at 555).

In a subsequent decision, <u>Ashcroft v. Iqbal</u>,129 S. Ct. 1937 (2009), the United States Supreme Court highlighted the two "working principles" underlying its holding in <u>Twombly</u>. First, while courts must accept all allegations of fact contained the complaint as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Iqbal</u>,129 S. Ct. at 1949-50 (quoting <u>Twombly</u>, 550 U.S. at 555). Second, courts must determine whether the complaint "states a plausible claim for relief," which is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> (citing <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007)).

The United States Court of Appeals for the Third Circuit instructed district courts to incorporate each of the "working principles" articulated in Iqbal as part of a two-part analysis when presented with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

## II. **Summary of Factual Allegations**

With the above standard in mind, this Court must assume the following facts are true for the purpose of ruling on the Motion to Dismiss.

According to the Trustee's *Amended Complaint*, Zambrano Corporation (the "Debtor") is a Pennsylvania corporation that previously engaged in the business of construction. (Dkt. #46, *Complaint of Rosemary C. Crawford, Trustee of the Estate of Zambrano Corporation*, ¶ 22). Mr. Zambrano was at all relevant times the sole controlling director and officer of the Debtor and the Debtor's one-hundred percent shareholder. (Id. ¶ 4).

The instant Adversary Proceeding began as a civil action filed by Miller Electric Construction against the Debtor and Mr. Zambrano in the Court of Common Pleas of Allegheny County. (Id. ¶ 3). Following commencement of an involuntary bankruptcy case against the Debtor on January 26, 2009 (the "Filing Date"), Mr. Zambrano removed the civil litigation to this Court. (Id.).

The Trustee was appointed following conversion of the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code on June 26, 2009. (Id. ¶

2). Thereafter, the Trustee was substituted as the real party in interest in the civil

litigation pursuant to an order of this Court entered February 1, 2010. (Id. ¶ 3).

According to the Trustee's *Amended Complaint,* the Debtor's September 30,

2007 financial statement evidenced that the Debtor had a negative net worth of

$139,317. (Id. ¶ 10). The *Amended Complaint* also avers that at all times relevant

to this Adversary Proceeding, Mr. Zambrano was aware of the Debtor's allegedly

insolvent financial condition. (Id. ¶¶ 15-17). Despite Mr. Zambrano's ongoing

knowledge of the Debtor's financial condition, the Trustee alleges Mr. Zambrano

caused the Debtor to engage a pattern of activity both prior to and following

September 30, 2007, which advanced Mr. Zambrano's self-interest at the expense

of the Debtor and its creditors. (Id. ¶¶8, 27-29).

Specifically, the Trustee alleges Mr. Zambrano caused the Debtor to engage

in unprofitable contracting work on behalf of entities in which Mr. Zambrano

maintained a personal interest (the "Affiliated Entities"). (Id. ¶23). As a result, the

Debtor incurred losses in excess of $5 million on two contracts alone, one with

"Marbella Condominium" and the other with "151 First Side Associates, LLC"

("First Side"). (Id.).

Aside from failing to ensure the Debtor would profit from the contract with

First Side, the *Amended Complaint* alleges that Mr. Zambrano caused the Debtor

to purchase Mr. Zambrano's 50% interest in First Side project, without regard to

the value of the investment. (Id. ¶ 12(A)). The cost to the Debtor for this

investment was approximately $2 million in transferred value, comprised of cash and the absorption of cost overruns on the project. (Id. ¶¶ 12(A), 23). In addition to this initial cost of investment, First Side accumulated $400,000 in arrears owed to the Debtor for outstanding invoices. (Id. ¶¶ 13).

Similarly, Mr. Zambrano allegedly caused the Debtor to accrue accounts receivable from other Affiliated Entities, without regard to those Entities willingness or ability to pay at a total cost to the Debtor of approximately $8.5 million. (Id. ¶¶ 8, 19). Once again, despite his knowledge of the Debtor's financial condition, Zambrano allowed nearly $5 million of these arrears to accrue between September 30, 2007 and the Filing Date. (Id. ¶¶ 19-21).

Mr. Zambrano also caused the Debtor to make loans to the Affiliated Entities in which Mr. Zambrano held a controlling direct or indirect interest. (Id. ¶ 8). Once again, this was apparently done without regard to those Entities willingness or ability to pay. (Id. ¶¶ 8, 12(D), 19, 20(C), 21(C)). The Trustee further alleges Mr. Zambrano caused loans to be made to certain Affiliated Entities that already owed the Debtor unpaid accounts receivable. (Id. ¶ 8). In total these loans cost the Debtor approximately $1.9 million, of which $635,000 arose as a result of new loans made between September 30, 2007 and the Filing Date. (Id. ¶¶ 8, 19-21).

During this same time period, Mr. Zambrano also caused the Debtor to make loans to himself in the amount of $80,300. (Id. ¶¶ 19-21). The loans were

allegedly made in addition to $393,543 in outstanding loans made to Mr. Zambrano prior to September 30, 2007. (Id. ¶ 12(C)). From September 30, 2007 until the Filing Date the Debtor did not make loans to any person or entity other than the Affiliated Entities or to Mr. Zambrano. (Id. ¶ 22).

While engaged in making loans to himself and to the Affiliated Entities (as well as allowing accounts receivable from those same Affiliated Entities to accrue), the Debtor was failing to pay trade creditors for completing work on various projects. (Id. ¶ 28).

As a result of the above activities, there was an increase in the Debtor's accounts payable of approximately $11 million and its bank debt by approximately $3 million between September 30, 2007 and the Filing Date. (Id. ¶¶ 24-25).

The Trustee therefore avers that Mr. Zambrano engaged in a calculated pattern of self-interested conduct at the expense of the Debtor and its creditors. (Id. ¶ 29). Given the alleged circumstances, the Trustee has asserted seven causes of action against Mr. Zambrano in the *Amended Complaint*. (Id. ¶¶ 30-70).

Specifically, Count I is claim for breach of fiduciary duty. (Id. ¶¶ 35-36, 41-42). Counts II, III, IV, and V are claims for gross mismanagement, corporate waste, deepening insolvency, and for recovery of fraudulent transfers respectively. (Id. ¶¶ 46-47, 52, 56-57, 60-63). Count VI is for conversion; and Count VII seeks to impose a constructive trust over any particular assets formerly owned by the

Debtor and improperly transferred to, or for the benefit of, Mr. Zambrano. (Id. ¶¶ 66, 70).

### III.  **The Motion to Dismiss**

In response to the Trustee's *Amended Complaint,* Mr. Zambrano asserts all counts should be dismissed as this Court lacks subject-matter jurisdiction over the *Amended Complaint.* (Dkt. #51, *Motion to Dismiss Pursuant to Bank. Rule 12(b) and Fed.R.Civ. P. 12(b)(1)*).   In support, Mr. Zambrano alleges the Trustee abandoned all receivables to the primary secured creditor of the estate, TriState Capital Bank ("TriState").  As such, Mr. Zambrano alleges that the Trustee lacks standing.  (Id. ¶¶ 11-12).

In a subsequently filed *Reply Brief in Support of Motion to Dismiss,* Mr. Zambrano alleges two additional grounds for dismissal of the *Amended Complaint.* First, Mr. Zambrano argues all counts must be dismissed because the Trustee has failed to join TriState, an allegedly indispensable party pursuant to Fed. R. Civ. P. 19.  (Dkt. #60, *Reply Brief in Support of Motion to Dismiss,* pp. 2-3).

In the alternative, Mr. Zambrano avers that each count of the *Amended Complaint* fails, contending that: (1) the Trustee's deepening insolvency, fraudulent transfer, conversion and constructive trust counts fail to state a viable claim for relief; and (2) the Trustee's gross mismanagement and corporate waste counts do not represent independent causes of action and, therefore, should be dismissed as "redundant." (Id. at pp. 3-6).

## IV. Discussion

## The Causes of Action by the Trustee Were Not Abandoned

Mr. Zambrano asserts that the Trustee's *Amended Complaint* should be dismissed because the claims asserted by the Trustee were allegedly abandoned from this bankruptcy estate when the Court entered its order of August 18, 2009. Mr. Zambrano's abandonment theory is without merit.

It is true that TriState did move for relief from the automatic stay and for abandonment of certain of its collateral. It is also true that the Court granted TriState's motion. However, the relief granted by the Court was limited to TriState's interest in "Real Estate" and "Collateral."

With respect to the term "Collateral," TriState's motion defined this term as merely the Debtor's "accounts, accounts receivable, licenses, interests in insurance policies, replacements, substitutions and the proceeds thereof." (See Dkt. #268, *Motion of Tristate Capital Bank for Relief from the Automatic Stay and for Abandonment Pursuant to the Provisions of Section 362(d) and 554(b) of Title 11, United States Code*, ¶ 5). As such, nothing in TriState's motion, or the Court's order granting it, provided for the abandonment of commercial tort claims like the ones now being asserted by the Trustee. For this reason, Mr. Zambrano's Motion to Dismiss is without merit.

In addition, the Court notes that Mr. Zambrano has suggested that TriState is a "necessary and indispensable party" to this litigation. Here too the Court

disagrees.  The Court can certainly accord complete relief between the parties to

this litigation without joining TriState to this adversary proceeding.  Also, this

lawsuit consists of commercial tort claims by the Trustee against Mr. Zambrano.

Nothing in the Trustee's *Amended Complaint* seeks an adjudication of TriState's

alleged interests, if any, in any recoveries that may be had by the Trustee in this

action.  A positive or negative determination of such interests (to the extent they

are even asserted by TriState) are left for another day.

### A Motion to Strike Counts II and III is Denied

Nowhere in the Motion does Mr. Zambrano dispute that the Trustee has

stated a general claim for breach of fiduciary duty in Count I of the *Amended

Complaint.*  However, Mr. Zambrano alleges counts II and III (claims for gross

mismanagement and corporate waste) are subsumed by the breach of fiduciary

duty count and should be dismissed as "redundant."  (Dkt. #60, pp. 2-3).  While

the Motion seeks dismissal pursuant to Rule 12(b), the allegation that counts II

and III are "redundant" actually constitutes a motion to strike pursuant Fed. R.

Civ. P. 12(f).  Therefore, the Court looks to Rule 12(f) standards to determine if

Counts II and III should be stricken.

The standard for striking a portion of a complaint under Rule 12(f) "is strict

and . . . only allegations that are so unrelated to plaintiffs' claims as to be

unworthy of any consideration should be stricken." Johnson v. Anhorn, 334 F.

Supp. 2d 802, 809 (E.D. Pa. 2004) (quoting Becker v. Chicago Title Ins. Co., No.

Civ. A. 03-2292, 2004 U.S. Dist. LEXIS 1988, at *18, 2004 WL 228672, at *6 (E.D. Pa. Feb. 4, 2004)). Allegations that are alleged to be redundant do not need to be stricken if they cannot prejudice the adverse party. See Allegheny County Sanitary Authority v. U.S.E.P.A., 557 F. Supp. 419, 426 (W.D. Pa. 1983) (citing 2A J. Moore, Federal Practice § 12.21 (2d ed. 1982)).

Mr. Zambrano has failed to indicate how he would be prejudiced by the inclusion of the gross mismanagement and corporate waste counts. Further, each of these counts are admittedly interrelated as they represent different ways in which Mr. Zambrano allegedly breached his fiduciary duty as the controlling shareholder and officer of the Debtor. (See Dkt. #62, *Plaintiff's Sur-Reply Brief*, p. 5). As the inclusion of counts II and III may ultimately lead to a better understanding of the Trustee's overall claim, they should not be stricken. See Delaware Health Care, Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1292 (D. Del.1995) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 695-96 (2d ed. 1990)).

### "Deepening Insolvency" is a Cause of Action in Pennsylvania

Mr. Zambrano asserts that Count IV of the Trustee's *Amended Complaint* ("deepening insolvency") should be dismissed as it "does not constitute an independent cause of action . . . ." (Dkt. #60, p. 4). This Court disagrees.

In Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit

predicted that deepening insolvency would be recognized as an independent cause

of action under Pennsylvania law. Id. at 349.  According to the Third Circuit, a

cause of action for deepening insolvency arises when there is "an injury to the

Debtors' corporate property from the fraudulent expansion of corporate debt and

prolongation of corporate life." Id. at 347.  In a subsequent decision, In re CitX,

448 F.3d 672 (3d Cir. 2002), the Third Circuit clarified its holding in Lafferty, by

highlighting that only a showing of fraudulent conduct is sufficient to support a

cause of action for deepening insolvency.  CitX, 448 F.3d at 681.

Despite negative treatment by some Pennsylvania courts,[1] this Court is

bound by the Third Circuit's holdings in Lafferty and CitX to recognize deepening

insolvency as an independent cause of action under Pennsylvania law.  As such,

Mr. Zambrano's Motion to Dismiss as to Count IV will be denied.

### The Trustee Has Stated a Claim for Fraudulent Transfers

Count V, asserts a cause of action for fraudulent transfers by alleging Mr.

Zambrano caused the Debtor to engage in the transfer of assets in exchange for

little, if any, value to the Debtor, resulting in the Debtor's insolvency (or the

deepening of a pre-existing insolvency).  (See Dkt. #46, ¶¶ 60-63).  A fraudulent

---

[1] See e.g., Ario v. Deloitte & Touche, LLP., No. 734 M.D.2002, 2008 Pa. Commw. LEXIS 437, 2008 WL 6626953 (Pa. Commw. Ct. June 13, 2008) (holding deepening insolvency is only a valid theory of damages that must be supported by a separate cause of action such as malpractice or professional negligence); Miller v. Santilli, No. 1225, 2007 Phila. Ct. Com. Pl. LEXIS 252, at *13 (Pa. C.P. Sept. 20, 2007) (holding a cause of action for deepening insolvency is without utility because traditional claims for fraud and breach of fiduciary duty are sufficient to recover for any harm following a bankruptcy filing).

transfer is deemed to have occurred when, among other things, the debtor "received less than a reasonably equivalent value in exchange for such transfer . . ." and was insolvent (or became insolvent) on the date of the transfer. 11 U.S.C. § 548(a)(1).[2]

Aside from alleging the Trustee lacks standing to pursue Count V, Mr. Zambrano offers no support for his assertion that the cause of action for fraudulent transfers should be dismissed. (See Dkt. #60, p. 4). Therefore, as this Court has already rejected Mr. Zambrano's arguments regarding the Trustee's standing, the Motion to Dismiss as to Count V will be denied.

### The Motion to Dismiss the Conversion Count is Denied

In Count VI of the *Amended Complaint*, the Trustee alleges that Mr. Zambrano converted the Debtor's assets by causing the Debtor to enter into the Affiliated Transfers. In response, Mr. Zambrano contends the Trustee has failed to state a viable claim for conversion because the Trustee "has failed to specify *any* 'identifiable funds' that were allegedly converted." (Id. at p. 5) (emphasis in original). This Court is not persuaded by Mr. Zambrano's argument.

Courts agree that "identifiable funds" may be the subject of a tort action for conversion in Pennsylvania. See e.g., Pioneer Commer. Funding Corp. V. Am. Fin. Mortg. Corp., 855 A.2d 818, 827 n.21 (Pa. 2004) ("Identifiable funds are deemed

---

[2] The provisions contained in Section 548 of the Bankruptcy Code concerning fraudulent transfers are analogous to the provisions of the Pennsylvania uniform fraudulent transfer statute found at 12 Pa. Cons. Stat. Ann. §§ 5104-5105.

a chattel for purposes of conversion.") (citations omitted).  Further, courts have

held that funds may be "identified" in a number of ways, including by description.

See e.g., Roderick Dev. Inv. Co. v. Community Bank, 668 N.E.2d 1129, 1137 (Ill.

App. Ct. 1st Dist. 1996) ("[M]oney may be identified not only by segregation but

also by its source or description.") (citing Autoville, Inc. v. Friedman, 20 Ariz. App.

89, 510 P.2d 400, 402 (Ariz. App. 1973)).

In her *Amended Complaint,* the Trustee has specifically identified the funds

allegedly converted by Mr. Zambrano as all of the over $17 million in assets

transferred away from the Debtor as a result of the Affiliated Transfers.  While the

*Amended Complaint* does not catalog each specific dollar amount allegedly

converted, the Trustee cites several examples, including: (1) the Debtor's

"purchase" of Mr. Zambrano's interest in the First Side project at a cost of $2

million (see Dkt. #46, ¶ 12(A)); (2) the balance of "loans" made to five of the

Affiliated Entities (see id. ¶ 12(D) n.5); and (3) the balance of "loans" made by the

Debtor to Mr. Zambrano between October 1, 2007 and September 30, 2008.  (See

id. ¶ 21(B)).

Rule 8 of the Federal Rules of Civil Procedure (made applicable in adversary

proceedings by Fed. R. Bankr. P. 7008), only requires "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Indeed, courts have found that Rule 8 does not require plaintiffs to allege when

each transfer of assets occurred or the exact amount diverted to support a cause

of action for conversion.  See e.g., Schwartz v. Kursman (In re Harry Levin, Inc.),

175 B.R. 560, 568-69 (Bankr. E.D. Pa. 1994); Jami Marketing Services, Inc. v.

Howard, No. 86 CV 3352, 1988 WL 46106 at *3 (E.D. N.Y. April 26, 1988).  Given

the detailed language in the *Amended Complaint,* this Court does not believe Mr.

Zambrano can seriously assert the Trustee has failed to provide him with

sufficient notice of the count for conversion.  As such, Mr. Zambrano's Motion to

Dismiss as to Count VI will be denied.

## Constructive Trust Remains a Viable Remedy

The Trustee concedes that imposition of a constructive trust, Count VII, is

a remedy and not an independent cause of action.  (See Dkt. # 62, *Plaintiff's Sur-*

*Reply Brief,* p. 10).  As the imposition of constructive trust is not recognized as a

cause of action, an issue remains as to whether Count VII should be dismissed.

See e.g., ClubCom, Inc. v. Captive Media, Inc., 02:07-cv-1462, 2009 WL 249446

at *15 (W.D. Pa. Jan. 31, 2009) (holding that imposition of a constructive trust

is an equitable remedy and does not constitute an independent cause of action).

This Court finds that to the extent the transfers of the Debtor's assets are

traceable to Mr. Zambrano, the imposition of a constructive trust over such assets

is an appropriate remedy for the Trustee's remaining counts. See Voest-Alpine,

919 F.2d at 216-18 (holding the imposition of a constructive trust is an

appropriate remedy for a fraudulent conveyance cause of action); see also In re

Brockway Pressed Metals, Inc., 363 B.R. 431, 453 (Bankr. W.D. Pa. 2007)

(discussing several applications for the imposition of a constructive trust as a remedy to avoid unjust enrichment) (citations omitted). For this reason, Count VII will not be dismissed or stricken from the Trustee's *Amended Complaint*.

## V.  Conclusion

For the reasons set forth above, Mr. Zambrano's Motion to Dismiss all counts of the Trustee's *Amended Complaint* for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) or for failure to join an indispensable party (presumably pursuant to Fed. R. Civ. P. 12(b)(7)) will be denied. In addition, taking the factual allegations in the *Amended Complaint* as true, each Count will survive Mr. Zambrano's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). An appropriate order will follow.

Dated: **August 24, 2010**

**JEFFERY A. DELLER**
U.S. Bankruptcy Judge

**Case Administrator To Mail Copy To:**
    Rosemary C. Crawford, Esq.
    Owen W. Katz, Esq.
    Robert O Lampl, Esq.
    Office of the U.S. Trustee

**FILED**

AUG 24 2010

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA

00004758.WPD

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ZAMBRANO CORPORATION, | : | Bankruptcy No. 09-20453-JAD |
| | : | |
| Debtor. | : | Chapter 7 |
| _____ | : | |
| | : | |
| ROSEMARY C. CRAWFORD, | : | |
| Trustee of the Estate of Zambrano | : | Adversary No. 09-02045-JAD |
| Corporation, | : | |
| | : | |
| Plaintiff, | : | Doc. No. 51 |
| | : | |
| v. | : | |
| | : | |
| EUGENE ZAMBRANO, III, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

ORDER OF COURT

AND NOW this **24th** day of **August**, **2010**, for the reasons expressed in the *Memorandum Opinion* issued contemporaneously herewith, the Court hereby **ORDERS**, **ADJUDGES** and **DECREES** that:

1. The *Motion to Dismiss Pursuant to Bank.Rule 12(b) and Fed.R.Civ. P. 12(b)(1)* is **DENIED**; and

2. Defendant, Eugene Zambrano, III, shall have twenty-one (21) days from the date of this Order to file an answer to the *Amended Complaint*.

Dated: **August 24, 2010**

JEFFERY A. DELLER
U.S. Bankruptcy Judge

Case Administrator To Mail Copy To:
Rosemary C. Crawford, Esq.
Owen W. Katz, Esq.
Robert O Lampl, Esq.
Office of the U.S. Trustee

**FILED**

AUG 24 2010

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST OF PENNSYLVANIA

00004758.WPD